# IN THE SUPREME COURT OF IOWA

No. 08–0393

Filed July 2, 2010

**IN RE THE DETENTION OF**
**ALAN C. FOWLER,**

**ALAN C. FOWLER,**

Appellant.

---

Appeal from the Iowa District Court for Clinton County, Charles H. Pelton, Judge.

On appeal from his commitment as a sexually violent predator, the respondent argues the district court erred in denying his motion to dismiss based on the State's failure to prosecute the civil commitment action within the ninety-day time period provided by Iowa Code section 229A.7(3) (2007). **REVERSED AND CASE REMANDED FOR DISMISSAL.**

Mark C. Smith, State Appellate Defender, and Amy Kepes, Assistant Public Defender, for appellant.

Thomas J. Miller, Attorney General, Linda J. Hines and Becky Goettsch, Assistant Attorneys General, for appellee State of Iowa.

**BAKER, Justice**.

On appeal from his commitment as a sexually violent predator (SVP), the respondent, Alan Fowler, argues the district court erred in denying his motion to dismiss based on the State's failure to prosecute the civil commitment action within the ninety-day time period provided by Iowa Code section 229A.7(3) (2007), and in admitting evidence of criminal charges, allegations, and suspicions that did not result in convictions and which violated his right to confront the witnesses against him.[1] We hold that the ninety-day time limit was mandatory. Because the State failed to bring Fowler to trial within ninety days and did not request a continuance nor provide a showing of good cause, the case must be dismissed.

## I. Background Facts and Proceedings.

On October 14, 2005, Fowler was convicted of willful injury resulting in bodily injury and going armed with intent. For these convictions, he served two years in the Anamosa State Penitentiary. He was scheduled to be released on October 17, 2007.

On September 27, 2007, the State filed a petition alleging that Fowler is an SVP as defined in Iowa Code chapter 229A and that pursuant to this chapter, he should be committed to the custody of the department of human services to be held in a secure facility for control, care, and treatment until such time as his mental abnormality has so changed that he is safe to be at large in the community. A probable cause hearing was held on October 11, 2007. It was determined that Fowler's previous convictions were for sexually motivated offenses

---

[1]Because we find Fowler's first claim of error dispositive, we need not address his evidentiary claims.

according to Iowa Code sections 229A.2(9) and 229A.2(10). The court subsequently determined probable cause existed to believe Fowler was an SVP and set the case for trial on February 11, 2008.

On January 10, 2008, Fowler filed a motion to dismiss the State's petition. Fowler claimed that under Iowa Code section 229A.7(3) he had a statutory right to a speedy trial within ninety days of the completion of the probable cause hearing. Fowler's probable cause hearing was held on October 11, 2007; therefore, the ninetieth day after the hearing and the last day to bring him to trial was January 9, 2008. His trial was set for February 11. On January 10, he filed a motion claiming the State failed to bring him to trial within the time limit mandated by chapter 229A, and therefore he should be immediately released from the custody of the department of corrections. The State filed a resistance to Fowler's motion to dismiss and a motion to continue the trial for good cause.

The district court determined the ninety-day time limit for holding a trial following a finding of probable cause under Iowa Code section 229A.7(3) was directory rather than mandatory and denied Fowler's motion to dismiss. The district court also found that the court's scheduling error, Fowler's failure to request a speedy trial, and the relatively short period of time in which the scheduled trial date exceeded the ninety-day limit constituted "good cause" for purposes of Iowa Code section 229A.7(3).

Fowler's trial was held as scheduled on February 11. The jury determined that Fowler's previous crimes of willful injury causing bodily injury and going armed with intent were sexually motivated and further concluded Fowler was an SVP. Accordingly, the court ordered that Fowler be committed to the custody of the director of the department of human services for control, care, and treatment until his mental

abnormality has changed and he is safe to be discharged. Fowler appealed.

## II. Discussion and Analysis.

The issue presented for our review is whether the district court erred in denying Fowler's motion to dismiss based on the State's failure to prosecute the civil commitment action within the ninety-day time period provided by Iowa Code section 229A.7(3). We review issues concerning the statutory construction of Iowa Code chapter 229A for correction of errors at law. *In re Det. of Shaffer*, 769 N.W.2d 169, 172 (Iowa 2009).

**A. Ninety-day time limit.** Iowa Code section 229A.7(3) states:

> *Within ninety days after either the entry of the order waiving the probable cause hearing or completion of the probable cause hearing held under section 229A.5, the court shall conduct a trial to determine whether the respondent is a sexually violent predator.* The respondent or the attorney for the respondent may waive the ninety-day trial requirement as provided in this section; however, the respondent or the attorney for the respondent may reassert a demand and the trial shall be held within ninety days from the date of filing the demand with the clerk of court. . . .

(Emphasis added).[2] Fowler claims that the plain language of this statute requires the court to conduct a trial within ninety days of the probable cause hearing.[3] For reasons that follow, we agree and hold that the legislature intended the ninety-day time limit to be mandatory such that a violation will invalidate subsequent actions.

---

[2]Iowa Code section 229A.7 was amended by the Iowa Legislature in 2009, but this amendment does not affect our analysis of this case. *See* 2009 Iowa Acts ch. 41, § 228 (codified at Iowa Code § 229A.7(5) (Supp. 2009)).

[3]Alternatively, Fowler argues the State's failure to conduct a trial within ninety days violates his due process rights under the United States Constitution and the Iowa Constitution. Because we find merit in his statutory construction argument, we do not address his constitutional claims.

Our rules of statutory interpretation are well established. " 'When we interpret a statute, we attempt to give effect to the general assembly's intent in enacting the law. Generally, this intent is gleaned from the language of the statute.' " *Cubit v. Mahaska County*, 677 N.W.2d 777, 781 (Iowa 2004) (quoting *Griffin Pipe Prods. Co. v. Guarino*, 663 N.W.2d 862, 864–65 (Iowa 2003)). " 'We do not search for meaning beyond the express terms of a statute when the statute is plain and its meaning is clear.' " *Id.* at 781–82 (quoting *In re Name Change of Reindl*, 671 N.W.2d 466, 469 (Iowa 2003)). Under the plain language of the statute, the trial must be held within ninety days of the probable cause hearing.

In a statute, the word "shall" generally connotes a mandatory duty. *Jefferson County Farm Bureau v. Sherman*, 208 Iowa 614, 618, 226 N.W. 182, 185 (1929). The Iowa Legislature has determined that "[u]nless otherwise specifically provided by the general assembly . . . [t]he word '*shall*' imposes a duty." Iowa Code § 4.1(30). In past criminal cases, "we have [also] interpreted the term 'shall' in a statute to create a mandatory duty, not discretion." *State v. Klawonn*, 609 N.W.2d 515, 522 (Iowa 2000); *see also State v. Luckett*, 387 N.W.2d 298, 301 (Iowa 1986) (stating use of the word "shall" creates mandatory action unless the context clearly indicates otherwise); *State v. Moyer*, 382 N.W.2d 133, 134–35 (Iowa 1986).

As previously stated, we look to the legislative intent. *Cubit*, 677 N.W.2d at 781. We need not guess at the legislature's intent in enacting this chapter because an explanation is contained within the bill. The explanation reads:

> [S]exually violent predators generally have antisocial personality features that are unamenable to existing mental

> illness treatment modalities and that render them likely to engage in sexually violent behavior. The general assembly finds that sexually violent predators' likelihood of engaging in repeat acts of predatory sexual violence is high and that the existing involuntary commitment procedure under chapter 229 is inadequate to address the risk these sexually violent predators pose to society.
>
> The general assembly further finds that the prognosis for rehabilitating sexually violent predators in a prison setting is poor, because the treatment needs of this population are very long-term, and the treatment modalities for this population are very different from the traditional treatment modalities available in a prison setting . . . . Therefore, the general assembly finds that a civil commitment procedure for the long-term care and treatment of the sexually violent predator is necessary. The procedures regarding sexually violent predators should reflect legitimate public safety concerns, while providing treatment services designed to benefit sexually violent predators who are civilly committed. . . .

Iowa Code § 229A.1. A primary purpose of the statute is protection of the public, which is achieved through the confinement of SVPs for long-term treatment. *Atwood v. Vilsack,* 725 N.W.2d 641, 651 (Iowa 2006); *see also In re Hendricks,* 912 P.2d 129, 136 (Kan. 1996) ("It is clear that the overriding concern of the legislature is to continue the segregation of sexually violent offenders from the public."), *overruled by Kansas v. Hendricks,* 521 U.S. 346, 368–69, 117 S. Ct. 2072, 2085, 138 L. Ed. 2d 501, 519 (1997). Because the Iowa Legislature recognized that long-term confinement for treatment constitutes a potential deprivation of a liberty interest, the legislature included certain procedural protections in the SVP civil commitment act that are akin to those accorded criminal offenders who face imprisonment. *See* Iowa Code § 229A.7 (providing for a commitment procedure that contains many of the due process rights accorded criminal defendants). The ninety-day time limit for trial is one of those protections.

The history of Iowa's SVP act is also instructive. The language of Iowa Code section 229A.7 was copied almost verbatim from a Kansas statute after the United States Supreme Court found the Kansas Sexually Violent Predator Act to be constitutional. *Hendricks*, 521 U.S. at 368–69, 117 S. Ct. at 2085, 138 L. Ed. 2d at 519.

In *Hendricks*, the United States Supreme Court determined that double jeopardy protections did not attach to the identical Kansas Act because the Act's purpose was not punitive. *Id.* Rather, the Court determined that the Kansas Act, like many other involuntary civil commitment statutes, was intended to segregate sexually violent offenders from the public. *See id.* at 358, 117 S. Ct. at 2080, 138 L. Ed. 2d at 513 (stating the Kansas Act was similar to other involuntary civil confinement statutes which serve to confine those who suffer from an impairment that renders them dangerous to the public). The Kansas SVP Act was therefore deemed civil in nature. *Id.* at 369, S. Ct. at 2086, 138 L. Ed. 2d at 520.

> The Supreme Court, however, recognized that while some
>
> [s]tates have in certain narrow circumstances provided for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety[,] [the Court has] consistently upheld such involuntary commitment statutes [only when] the confinement takes place pursuant to proper procedures and evidentiary standards.

*Id.* at 357, 117 S. Ct. at 2079–80, 138 L. Ed. 2d at 512; *see also Allen v. Illinois*, 478 U.S. 364, 369, 106 S. Ct. 2988, 2992, 92 L. Ed. 2d 296, 304 (1986) (declaring that civil commitment statutes for sexually violent predators are civil in nature, even though they are similar to criminal proceedings because they are accompanied by strict procedural safeguards). The *Hendricks* Court further determined that the

involuntary commitment of SVPs, a small "subclass of dangerous persons," was not in contravention of the United States Constitution. *Hendricks*, 521 U.S. at 357, 117 S. Ct. at 2079–80, 138 L. Ed. 2d at 512. The Court explained that it reached this conclusion because "[t]he numerous procedural and evidentiary protections afforded [in the statute] demonstrate that the Kansas Legislature has taken great care to confine only a narrow class of particularly dangerous individuals, and then only after meeting the strictest procedural standards." *Id.* at 364, 117 S. Ct. at 2083, 138 L. Ed. 2d at 517. A strong dissent from four justices noted the punitive nature of the confinement statute and concluded that "where so significant a restriction of an individual's basic freedoms is at issue, a State cannot cut corners." *Id.* at 396, 117 S. Ct. at 2098, 138 L. Ed. 2d at 536 (Breyer, J., dissenting).

Although the Kansas Act passed muster, it did so, to a great extent, because of the procedural and evidentiary protections contained in the Act. *Id.* at 364, 117 S. Ct. at 2083, 138 L. Ed. 2d at 517. We have noted the same. *See Atwood*, 725 N.W.2d at 648 ("The significant procedural protections afforded detainees during the pre-trial stage in SVP cases strongly influence our determination that the statute is narrowly tailored.").

In construing a statute identical to Iowa Code section 229A.7, the Kansas Supreme Court found the time limit imposed was "jurisdictional, mandatory, and a statutory right granted to respondents under the Act." *In re Searcy*, 49 P.3d 1, 10 (Kan. 2002). The Kansas Legislature, in response to the *Searcy* decision, amended its Act to provide that none of the time limits in the SVP Act were intended to be mandatory or to otherwise affect the district courts' subject matter jurisdiction. *See In re Hunt*, 82 P.3d 861, 870 (Kan. Ct. App. 2004). To effect this clarification,

two amendments were enacted. *Id.* As amended in 2003, Kansas Statutes Annotated section 59–29a01 now reads:

> Notwithstanding any other evidence of legislative intent, it is hereby declared that any time requirements set forth in K.S.A. 59–29a01 et seq. . . . *either as originally enacted or as amended,* are intended to be directory and not mandatory . . . .

(Emphasis added). The Kansas Legislature also added a new subsection to the Act providing that any time limits "are not jurisdictional." Kan. Stat. Ann. § 59–29a06 (2003). No such language appears in Iowa's SVP civil commitment act. *See* Iowa Code ch. 229A.

Like a criminal defendant's right to a speedy trial, due process requires that an SVP be entitled to an expeditious trial because his liberty is being infringed. *Swanson v. Civil Commitment Unit for Sex Offenders,* 737 N.W.2d 300, 308 (Iowa 2007) ("[T]hose who are involuntarily committed retain a liberty interest in the requirements and procedures of chapter 229A."). Although not required to do so, we believe that the legislature intended to create a bright-line rule to avoid any due process problems. *See, e.g., State v. Miller,* 637 N.W.2d 201, 204 (Iowa 2001) (stating that the speedy trial rule for criminal defendants is more stringent than is actually required by the Constitution). Given the lack of clarifying language in Iowa Code section 229A.7(3) concerning the nature of the time limits in the act, the legislature's mandate that the word "shall" imposes a duty, and the legislature's recognition of the due process requirement of an expeditious trial, we find that the legislature intended the ninety-day time limit to be mandatory.[4]

---

[4]This determination, however, may appear to conflict with our decision in *Taylor v. Department of Transportation,* 260 N.W.2d 521 (Iowa 1977). In *Taylor,* the appellant's driver's license was revoked for refusing to consent to a chemical test after his arrest for operating a motor vehicle while intoxicated. 260 N.W.2d at 522. Taylor claimed the

Having determined that the time limitation for trial is mandatory, we must determine the remedy for its violation. While it is clear that the language of the statute is mandatory, this is not the end of our analysis. "Mandatory and directory statutes each impose duties. The difference between them lies in the consequence for failure to perform the duty." *Taylor v. Dep't of Transp.*, 260 N.W.2d 521, 522 (Iowa 1977). A mandatory duty "is essential to the main objective of the statute . . . and a violation will invalidate subsequent proceedings under it." *Id.* at 522–23. If a duty is directory, a failure to perform the duty will not invalidate subsequent proceedings unless the individual has suffered prejudice as a result of the violation. *Id.* at 523; *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Attorney Doe No. 639*, 748 N.W.2d 208, 210 (Iowa 2008). The issue of whether a duty is mandatory or directory does not refer to "whether a statutory duty is obligatory or permissive but instead relates to whether the failure to perform an admitted duty will have the effect of invalidating the governmental action which the requirement affects." *Taylor*, 260 N.W.2d at 523.

We assume the legislature was not operating in a vacuum when it imposed the ninety-day limitation. We assume also that the legislature was aware that we have consistently upheld the enforcement of such bright-line rules by requiring dismissal, whether the time limit is civil or criminal. In the civil context, we have held a case must be dismissed for failure to bring the action within the applicable statute of limitations.

---

department of transportation lost jurisdiction when it failed to provide him with a hearing within twenty days of receiving his request for a hearing as required by the Iowa Code. *Id.* We determined that the time limitation was directory, not mandatory. *Id.* at 523. The determinative factor for finding the time limitation directory was because Taylor had not been prejudiced by the delay. *Id.* at 523–24. Fowler, however, was deprived of his liberty as a result of the delay and has suffered prejudice.

*See, e.g., Bob McKiness Excavating & Grading, Inc. v. Morton Bldgs., Inc.*, 507 N.W.2d 405, 408 (Iowa 1993) ("A statute of limitations bars, after a certain period of time, the right to prosecute an accrued cause of action."). In the criminal context, the appropriate remedy for violation of the speedy trial rule is dismissal unless good cause is shown. *State v. Nelson*, 222 N.W.2d 445, 449–50 (Iowa 1974); *see also State v. Goff*, 244 N.W.2d 579, 582 (Iowa 1976). We have also found dismissal appropriate where the grievance commission failed to appeal a decision of the attorney disciplinary board within the ten-day filing requirement. *Attorney Doe*, 748 N.W.2d at 210.

Any remedy other than dismissal would render a time limitation for trial meaningless. *State v. Johnson*, 217 N.W.2d 609, 612 (Iowa 1974). "Every limitation statute sets up an arbitrary date after which certain actions cannot be brought or certain rights cannot be enforced. One cannot escape the effect of such statutes by showing they were only violated a little bit." *Nelson*, 222 N.W.2d at 449; *see also Barker v. Wingo*, 407 U.S. 514, 522, 92 S. Ct. 2182, 2188, 33 L. Ed. 2d 101, 112 (1972) (stating that although dismissal is a serious consequence for a speedy trial violation, "it is the only possible remedy").

Fowler's probable cause hearing was held on October 11, 2007, and his trial was set for February 11, 2008, in violation of the ninety-day time limitation. We hold that the legislature created a bright-line rule which mandates that a trial occur within ninety days and dismissal is required unless good cause exists under the statute for delaying the trial beyond that time limit.

**B. Cause for Delay.** Iowa Code section 229A.7(3) states that the ninety-day time limit may be waived. It also provides:

> The trial may be continued  upon the request of either party and a showing of good cause, or by the court on its own motion in the due administration of justice, and when the respondent will not be substantially prejudiced.   In determining what constitutes good cause, the court shall consider the length of the pretrial detention of the respondent.

Iowa Code § 229A.7(3).  The State did not file a motion to continue trial for good cause until after the ninety days had passed and the motion to dismiss was filed.

The district court determined that the court's scheduling error, Fowler's failure to request a speedy trial, and the relatively short period of time by which the scheduled trial date exceeded the ninety-day limit constituted "good cause" for the purposes of Iowa Code section 229A.7(3).  As a prerequisite to extending the trial date beyond the ninety days, the statute requires a request by either party or action by the court.  Neither a request was made nor did any action by the court occur prior to the ninety days expiring.  The case cannot be resurrected by a motion after the fact.  *See, e.g., Doland v. Boone County*, 376 N.W.2d 870, 873 (Iowa 1985) (holding that a motion for continuance under Iowa Rule of Civil Procedure 215.1, now rule 1.944, must be filed before the automatic dismissal or the court is without jurisdiction to grant a motion for continuance).

Even if we were able to address the issue of whether good cause existed, we would not find it in this instance.  When we determine whether good cause for a delay exists, we focus on only one factor: " 'the reason for the delay.' "  *State v. Nelson*, 600 N.W.2d 598, 601 (Iowa 1999) (quoting *State v. Petersen*, 288 N.W.2d 332, 335 (Iowa 1980)).  Whether the miscalculation of the trial date occurred because of the court's scheduling or because of the inattention of the State, such an error is not justification for missing the deadline.  *Id.* at 602; *see also State v.*

*Sassman,* 226 N.W.2d 808, 809 (Iowa 1975) (declaring a shortage of clerical help does not constitute good cause). The State has provided no other justification for missing the deadline other than Fowler's failure to assert a right to speedy trial. Although the assertion of a speedy trial demand is a factor to be considered in a criminal case, *State v. Winters,* 690 N.W.2d 903, 908 (Iowa 2005), the State has fought long and hard to assert that this act is a civil action. *Atwood,* 725 N.W.2d at 649 n. 11; *In re Det. of Garren,* 620 N.W.2d 275, 280–81 (Iowa 2000). We are aware of no requirement that a defendant in a civil action demand to be brought to trial. Further, even in the criminal context we have noted that "[i]t is axiomatic that [a defendant has] no duty to bring himself to trial." *Nelson,* 600 N.W.2d at 602.

We hold that the ninety-day time limit in Iowa Code section 229A.7(3) is mandatory and because the State failed to bring Fowler to trial within ninety days, and did not request a continuance nor provide a showing of good cause, the case must be dismissed and the defendant released. Because we have determined that the State violated the ninety-day time limit, we need not address Fowler's due process claim.

### III. Disposition.

The legislature has mandated that an SVP must be brought to trial within ninety days of the probable cause hearing. The State failed to bring Fowler to trial within the ninety days. The case is remanded to be dismissed and Fowler released from custody.

**REVERSED AND CASE REMANDED FOR DISMISSAL.**